*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* FOOTE, Minors.

UNPUBLISHED
December 10, 2025
1:43 PM

No. 374854
Lenawee Circuit Court
Family Division
LC No. 21-000112-NA

Before: YATES, P.J., and BOONSTRA and YOUNG, JJ.

PER CURIAM.

Respondent-mother appeals of right the order terminating her parental rights to her minor children, VF and JF, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), and (j) (reasonable likelihood that child will be harmed if returned to parent). On appeal, respondent-mother blames the Department of Health and Human Services ("DHHS") and the trial court for impeding her efforts at reunification with her children. Also, respondent-mother asserts that she was denied her due-process right to appeal her removal from her home. We affirm.

## I. FACTUAL BACKGROUND

VF and JF are the youngest of seven children respondent-mother had with their father,[1] and the nine of them lived together. In August 2023, Children's Protective Services ("CPS") watched in-home camera footage of the oldest child, MF, getting angry and kicking then-23-month-old VF in the upper back, propelling her forward. Respondent-mother, who was on a nearby couch, made no effort to check on VF or control MF. MF then hit respondent-mother with a shoe. Respondent-mother started chasing MF through the home with the older children following her, and MF jumped out of the kitchen window because the front door of the home was locked with a deadbolt.

When CPS workers visited the home on August 7, 2023, they found the home unsanitary, unsafe, and covered in garbage. The also observed dead bugs and old food. VF was locked in the

---

[1] Father voluntarily released his parental rights to VF and JF, so he is not a party to this appeal.

-1-

bedroom, and respondent-mother did not know where the keys were. VF had not been medically examined since being kicked because respondent-mother did not feel that that was necessary, but she eventually agreed to have VF seen by a medical professional. When CPS workers expressed concerns about the locked doors, behavioral issues, and condition of the home, respondent-mother "did not see any issues with her behavior" and "believed [MF] is the problem in her home."

In September 2023, the DHHS filed a petition asking the trial court to take jurisdiction over all seven children based upon improper supervision, failure to protect, and physical neglect. The petition cited 14 previous CPS contacts, and father stated that respondent-mother only participated in services "due to the court involvement[,]" and he described her as a barrier to the family making changes. The DHHS requested that the trial court place the children in father's care with "in-home jurisdiction" and order respondent-mother to leave the home pursuant to MCL 712A.13a(4). The trial court authorized the petition, finding respondent-mother could be considered an abuser under the statute and ordering her removal from the home. All the children were placed with father under the supervision of the DHHS, and respondent-mother was afforded supervised parenting time.

On October 26, 2023, respondent-mother entered into a "Case Service Plan/Parent Agency Agreement" that required her to take part in services, including individual counseling and "trauma informed parenting classes" with Brenee Moore. Respondent-mother attended and participated in sessions with Moore, but respondent-mother was not showing consistent benefit from the parenting classes. She initially implemented what she learned during parenting time, but then she stopped. In January 2024, VF and JF were removed from father's care and placed in a licensed foster care home. The foster parents reported that both of the children sometimes cried before parenting time with respondent-mother because they did not want to attend, and afterwards struggled with severe night terrors, eating regression, mean and aggressive behaviors, and bathroom accidents.

At the August 2024 permanency planning hearing, respondent-mother stated that she had benefited from parenting classes, but foster care supervisor Leslie Conrad testified that respondent-mother had not shown sufficient improvement in parenting skills to prevent further traumatization of the children. VF and JF were experiencing significant behavior regressions after parenting time, they could not sleep alone because of night terrors, and VF was peeling her fingernails and toenails until they were raw. Hence, the trial court suspended respondent-mother's parenting time.

In December 2024, Moore reported that respondent-mother had not attended counseling since September. Respondent-mother requested Zoom sessions, claiming in-person appointments were impossible because of her work schedule, but Moore recommended against Zoom sessions. Respondent-mother was not exhibiting any benefit when talking about her parenting abilities, but respondent-mother stated that her parenting time had been suspended before she could implement the parenting skills she had learned, and she could not demonstrate any benefit if she could not see her children.

At the February 24, 2025 termination hearing, the trial court found that respondent-mother had not made progress addressing the conditions that caused removal, and those conditions could not be rectified in a reasonable time considering the ages of the children and the fact that they had been in foster care for most of their lives. The trial court found that statutory grounds existed to terminate respondent-mother's parental rights under MCL 712A.19b(3)(c)(*i*) and (j), and the trial court also found that termination was in the children's best interests. This appeal of right followed.

## II. LEGAL ANALYSIS

Respondent-mother faults the DHHS and the trial court for impeding her reunification with her children, and she insists that she was denied due process when she was removed from the home she shared with her children. We will address these issues in turn.

## A. IMPAIRMENT OF REUNIFICATION EFFORTS

Respondent-mother contends that she was denied reasonable efforts to reunify her with her children because the DHHS and the trial court actively impeded her ability to obtain reunification. Ordinarily, this Court reviews "for clear error the trial court's factual finding that petitioner made reasonable efforts to reunify respondents with the child." *In re Atchley*, 341 Mich App 332, 338; 990 NW2d 685 (2022). But unpreserved issues are reviewed for plain error affecting substantial rights. *In re Pederson*, 331 Mich App 445, 463; 951 NW2d 704 (2020). The plain-error standard requires respondent-mother to show that (1) an error occurred, (2) the error was plain, and (3) "the plain error affected substantial rights." *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011) (quotation marks and citation omitted). A plain error "affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008). Reversal is warranted only if the plain error "seriously affect[ed] the integrity, fairness, or public reputation of judicial proceedings." *In re Mota*, 334 Mich App 300, 311; 964 NW2d 881 (2020). On appeal, respondent-mother does not challenge the trial court's findings that reasonable efforts toward reunification were made, but she insists the trial court created the barriers to reunification used as a basis for terminating her parental rights. Because respondent-mother did not advance that argument in the trial court, we can only conduct a review for plain error.

Generally, the DHHS has an affirmative duty to make reasonable efforts to reunify a family before requesting termination of parental rights. *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017). "As part of these reasonable efforts, the [DHHS] must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Id.* at 85-86. Although the DHHS has to "expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). Further, a respondent must "demonstrate that [she] sufficiently benefited from the services provided." *Id.*

Here, respondent-mother received a trauma assessment, individual and family counseling, trauma-informed parenting classes, case management, and supportive visitation services. Further, VF and JF were provided with trauma assessments, and family team meetings were held regularly to determine family supports and needs. In sum, respondent-mother and her children were offered a wide range of services in an effort to accomplish reunification.

The record reveals that respondent-mother participated in services, but she did not benefit from those services. Respondent-mother began counseling and trauma-informed parenting classes with Moore in October 2023, but by March 2024, she had not shown any benefit and was resistant to acknowledging a need for change. Although there were periods when respondent-mother made progress with her parenting skills, VF and JF continued to exhibit negative behavior after parenting time, crying beforehand and struggling afterwards with night terrors, eating regression, bathroom

accidents, and mean and aggressive behaviors. VF began picking her fingernails and toenails until they were raw. Because of the harm that it was causing the children, the trial court chose to suspend respondent-mother's parenting time in August 2024. After that, the negative behavior of VF and JF decreased, and they were successfully toilet training and sleeping in their own beds.

Respondent-mother insists the trial court prevented her from demonstrating the parenting skills she had learned by suspending her parenting time. At the time of the suspension, respondent-mother had been exercising parenting time for almost one year. Despite consistently attending and participating in parenting classes with Moore, respondent-mother had not shown any benefit from them. She did not consistently exhibit the ability to parent her children without traumatizing them. Respondent-mother contends that if she had not been removed from the home, she would not have had to move an hour away, yet the trial court used the fact that she stopped seeing Moore as a basis to terminate her parental rights. The trial court stated, however, that respondent-mother's parental rights were being terminated because of her lack of progress and her failure to benefit from trauma-informed parenting classes. Therefore, respondent-mother's failure to benefit from services, rather than any lack of reasonable efforts by the DHHS or interference by the trial court, was the barrier that prevented reunification. Accordingly, neither the trial court nor the DHHS can be faulted for impeding respondent-mother's reunification with her children.

## B. DENIAL OF DUE PROCESS

Respondent-mother argues that, as a matter of due process, she should have been given the same opportunity to appeal her removal from the home as she would have been afforded to appeal the removal of her children from the home. Whether child protective proceedings "complied with a respondent's substantive and procedural due process rights is a question of law that this Court reviews de novo." *In re Sanborn*, 337 Mich App 252, 268; 976 NW2d 44 (2021) (citation omitted). But "an unpreserved claim of constitutional error is reviewed for plain error affecting substantial rights." *Id*. (quotation marks and citation omitted). Because respondent-mother did not present a due-process claim in the trial court, our review is confined to a search for plain error that affected her substantial rights.

The DHHS petitioned the trial court to remove the children from respondent-mother's care and custody and remove respondent-mother from the home pursuant to MCL 712A.13a(4), which permits the removal of a parent if a petition that alleges abuse is authorized, there is probable cause to believe the parent was the abuser, and the abuser remaining in the home "presents a substantial risk of harm to the child's life, physical health, or mental well-being." MCL 712A.13a(4); *In re Benavides*, 334 Mich App 162, 170; 964 NW2d 108 (2020). At the preliminary hearing, the trial court authorized the petition, and after concluding that respondent-mother was an abuser under the statute, ordered her removed from the home.

Respondent-mother does not dispute the abuse or the basis for removal. Instead, she claims that the trial court made the wrong decision by removing her because father thereafter was unable to manage the home and the children. Respondent-mother contends that she suffered irreparable harm because she was unable to appeal the removal order, but she fails to identify any error in the trial court's determination to remove her, much less anything sufficient to reverse that decision on appeal. Thus, we find no error at all, much less plain error, in the trial court's decision to remove

her from the home pursuant to MCL 712A.13a(4).  Accordingly, any appeal of that ruling, whether immediately after her removal from the home or at any later point, would have been unsuccessful.

Beyond that, under MCR 3.993(A)(1), "any order removing a child from a parent's care and custody" is an order appealable of right.  Both of the children were removed from respondent-mother's care and custody when they were placed in father's custody under the care of the DHHS, while respondent-mother was removed from the home and given supervised parenting time.  Thus, respondent-mother could have appealed of right at that juncture, but she failed to do so.  Her failure to exercise her right to appeal cannot be blamed on the trial court, nor can it support any relief on this appeal on the basis of a due-process theory.

Affirmed.

/s/ Christopher P. Yates
/s/ Mark T. Boonstra
/s/ Adrienne N. Young